# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JOHN ROBERT PFUETZE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 10-1139-CM-GLR** |
| ) | |
| **STATE OF KANSAS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

Plaintiff John Robert Pfuetze brings this civil rights action, *pro se* and *in forma pauperis*, against some thirty-five defendants. His ninety-four-page complaint sets out eighteen counts, arising out of his arrest, incarceration, and subsequent proceedings related to a municipal criminal threat case. Currently before the court are the following six (6) motions to dismiss:

Defendant State of Kansas' Motion to Dismiss (Doc. 33-1) (12(b)(1));

Motion to Dismiss Wichita Police Department (Doc. 63) (12(b)(4), (5), and (6));

Defendant The City of Wichita's Motion to Dismiss (Doc. 65) (12(b)(4) and (5));

Motion to Dismiss by Defendants Sorrell, Lawing, and Workforce Alliance (Doc. 67) (12(b)(6));

Motion to Dismiss by Defendants Simons and the Sedgwick County Sheriff's Department (Doc. 71) (12(b)(6)); and

Defendant Kansas Department of Labor Motion to Dismiss or In The Alternative for Summary Judgment (Doc. 90) (12(b)(1) & (6)).

Also pending are plaintiff's five (5) motions related to discovery: Motion to Subpoena

Electronic Data Concerning Unemployment Checks Concerning Mr. Pfuetze (Doc. 75); Motion to Subpoena Information From Wichita Police Department Concerning Mrs. Mildred Hall (Doc. 76); Motion to Subpoena Incident Report 07C090116 From Wichita Police Department Concerning Mr. Pfuetze (Doc. 77); Motion to Subpoena File Attributes from City Hall (Doc. 78); and Motion to Subpoena Mental Health Records of Mrs. Mildred Hall (Doc. 83.)

The court makes rulings as set out below, and dismisses the action in its entirety.

**I. Factual and Procedural Background**

According to the amended complaint, on Tuesday, November 13, 2007, plaintiff went to Workforce Alliance of South Central Kansas ("Workforce" or "Workforce Center"). Defendant Guard Barton prevented plaintiff from bringing his backpack in with him, which contained his anti-fungus medicine for jock itch. Plaintiff signed in with the receptionist, Ms. Mildred Ricks, and, after asking to see the supervisor, engaged in a conversation with Ms. Ricks.

According to plaintiff, he asked Ms. Ricks two questions. First, a "practice question": (1) "If one of your customers has jock itch, do you feel he should treat it?"; then, (2) "If a customer needs to carry medicine in a backpack in order to treat jock itch, should he be allowed to carry a backpack?" She answered yes to both questions, which pleased plaintiff and he said "thank you" and promptly left the building. (Doc. 42, at 34–36.)

However, according to Ms. Ricks—and as documented in a subsequent Wichita Police incidence report—plaintiff asked the following two questions before saying "thank you" and leaving the building: (1) "what if someone had a virus and spread it over the world?"; and (2) "[W]hat if

someone had a bomb in a backpack downstairs and it went off today?" (Doc. 42, at 37.)[1]

Plaintiff was arrested that same day, November 13, 2007. Defendant Officer Ed Naasz took him into custody, noting that he did not seem interested or concerned that he was being booked for criminal threats. Plaintiff maintains that during booking, certain items were seized and unlawfully searched, including his backpack. These items, along with the Workforce "sign in sheet" subsequently "disappeared into a memory hole." (Doc. 42, at 51.)

He was incarcerated for twenty-eight days, part in Sedgwick County jail, part in Cherokee County jail. (Doc. 42, at 54.) He asserts that he was separated from his spectacles and his antifungal medication for treating jock itch. (Doc. 42, at 51, 54.) Although he had his medicine for a short period of time during his stay at Sedgwick County Jail, he asserts that his inability to treat his condition led to the spread of the fungus around Kansas. (Doc. 42, at 54.)

---

[1] Plaintiff espouses several theories to explain the difference between what he said and what Ms. Ricks heard, and ultimately reported to the police. First, he asserts that Ms. Ricks has a mental illness and had a delusion that morning because she was having a "bad day." In support of this theory, he notes that (1) the police report indicates that she was "depressed," (Doc. 42, at 38); (2) a "57-minute" internet search revealed that she was a former member of Breakthrough, a "club" for people with mental illness (Doc. 42, at 39, 60, 83); her handwriting ("graphology evidence") indicated she had "more severe problems with mental illness than both Carol Bundy and Tim McVeigh." (Doc. 42, at 40, 41.)

Second, plaintiff believes Tonya Reed, a supervisor at Workforce, may have ordered Ms. Ricks to lie in the police report and witness statement and at the municipal trial on January 2, 2008. His "graphological" analysis of her handwritten witness statement supports his theory. (Doc. 42, at 42–44.)

Third, plaintiff suggests that, due to the dates involved, particularly the date of his plea—November 4—plaintiff believes that a "political enemy" or "political loser" may have bribed Ms. Ricks to "assassinate [his] character." (Doc. 42, at 45.) Specifically, he theorizes that a member of the Bilderberg group, which is a semi-secret group of world political leaders—including then-Governor Kathleen Sebelius—who are against the constitution, may have been behind the bribe, and may have bribed defendant Keith Lawing to "take [plaintiff] out." (Doc. 42, at 45–4.)

Fourth, plaintiff throws out a "wildcard theory": although he has used community showers his entire life, from grade school through high school, during "basic training" and "officer basic"; and while on vacation, he did not pick up a "fungal issue" until residing in Wichita. He suggests that Workforce may have filed these false criminal charges because of his implied accusations that Workforce rules "promote the spread of fungal infections." (Doc. 42, at 47.)

-3-

Related to his arrest and incarceration, plaintiff was stolen from at least nine times (Doc. 42, at 61),[2] and was the victim of at least one attempted homicide. Additionally, he received unwanted medical care in the form of a swab with isopropyl alcohol, which he believes causes cancer and which he had indicated he was allergic to. (Doc. 42, at 56.) His complaint also sets out detailed allegations that, while incarcerated, he was subject to a shortage of food, poor nutrition, tooth chips, month-long diarrhea, a spider bite, and hair loss from anti-lice shampoo, among other things. (Doc. 42, at 55–58.) He also asserts that more recently, he began to have sebaceous cysts, which he appears to link to the alcohol swab. (Doc. 42, at 56.) He was unemployed at the time of his arrest and incarceration, but believes he lost employment opportunities because he was in jail. (Doc. 42, at 58.)

Plaintiff was released on bond from Sedgwick County Jail on December 10, 2007, into extreme conditions—an ice storm— with insufficient clothing, no medication, and no exit check, which he believes constituted a second attempted homicide. (Doc. 42, at 54.)

He makes allegations about unfairness in the receipt of and presentation of evidence at his trial. (Doc. 42, at 58–60.) It appears that he was thwarted in his attempt to obtain copies of the incident report in his case, and that his attorney—as well as the prosecutor and judge—"forgot 'items/data' they learned in their first year of law school," which contributed to plaintiff "losing his first trial." (Doc. 42, at 58.) He discusses his mental evaluation and continuing therapy and his refusal to take prescribed medication. He sets out details about his "detective work"; roadblocks he encountered; and documents and other information he uncovered in relation to his case. (Doc. 42, at 60.) Finally, he notes "curious promotions" that occurred after the complained-of incidents,

---

[2] He sets out allegations regarding the thefts in detail at Doc. 42, pages 61–67, and names individual defendants in relation to each.

-4-

apparently in support of a theory that government actors were in a conspiracy to suppress him and his activities during the period of time surrounding the presidential election. (Doc. 42, at 67.)

On November 4, 2008, the charges were dismissed with prejudice pursuant to a "deal." (Doc. 42, at 1.) And on May 4, 2009, Judge Warren Wilbert "dismissed the case with prejudice and found [plaintiff] innocent." (Doc. 42, at 1.) Throughout his allegations, he maintains that he never made any threat.

His ninety-four-page amended complaint, originally filed on May 4, 2010, asserts eighteen causes of action, the first six of which he entitles "federal" causes of action. The remaining are entitled "state law causes of action."

As this is an action pursuant to 42 U.S.C. §§ 1983 and 1988, plaintiff asserts federal question jurisdiction, and "invokes the supplemental jurisdiction of this Court to adjudicate state law claims pursuant to 28 U.S.C. § 1367." (Doc. 42, at 22.)

In damages, he seeks compensation for

> "the arrest for a bomb threat that was never vocalized, a viral threat that was never vocalized, offensive language that was never uttered, formal charges, 28 days in jail, nine thefts, conviction, 17 months of mind-control counseling, 21 months of a large hurdle in finding meaningful employment due to the arrest on record, now an extra hurdle in finding meaningful employment because he has no recent engineering experience; and a lifetime hurdle because of an arrest; this action seeks to redress the unlawful policies of Workforce, guard Barton, WPD, Wichita Department of Law, City of Wichita, Sedgwick County Jail, Sedgwick County, Cherokee County Jail, Cherokee County, State of Kansas, The United States, et al."

(Doc. 42, at 21.) He seeks compensatory, punitive damages, as well as pre- and post-judgment interest.

A number of the defendants named in this action have countered with motions seeking dismissal for various reasons or a combination of reasons. Nine motions contained arguments for dismissal under Federal Rule of Civil Procedure 12(b)(4) and/or (5) for insufficient service and

service of process; these were denied by the court in a Memorandum and Order dated September 7, 2010.[3] One current motion does the same (Doc. 65), and it is denied for the reasons set out in that Memorandum and Order. (Doc. 117.) Two current motions, filed by the State of Kansas and the Kansas Department of Labor, contain arguments for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Four motions contain arguments for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff requests oral argument on the motions. In its discretion, this court finds that oral argument is unnecessary for resolution of the motions, and the motions shall be determined on the briefs of the parties. D. Kan. Rule 7.2. The court has reviewed the pleadings, the motions, plaintiff's responses, and, to the extent they were filed, defendants' replies. Although not every motion mentions it, the court addresses its jurisdiction first.

**II.     Standards**

Federal courts, as courts of limited jurisdiction, may exercise jurisdiction only when authorized. *Strohm v. United States*, No. 06-4139-SAC, 2007 WL 3120704, at *1 (D. Kan. Oct. 24, 2007) (citing *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994)). A court lacking jurisdiction must dismiss the case regardless of the stage of the proceeding when it becomes apparent that jurisdiction is lacking. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). There is a presumption against federal jurisdiction, *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999), and the party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper, *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Mere conclusory allegations of jurisdiction are not enough. *United States ex rel. Hafter, D.O. v.*

---

[3] To the extent the instant motions rely on Rule 12(b)(4) and/or (5) in support of a request for dismissal, those motions are denied in part for the reasons set out in the court's September 7 Memorandum and Order.

*Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

When, as here, a plaintiff proceeds *pro se*, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001). While "failure [to] set forth clear and particularized jurisdictional allegations is not fatal to [a *pro se* party's] case," the court will not construe the plaintiff's complaint to create jurisdiction where there is none. *Rhodes v. Raymond*, No. 07-3229-CM, 2009 WL 1650248, at *4 (D. Kan. June 12, 2009) (quoting *Sears v. Equal Emp't Opportunity Comm'n*, No. 86-2470, 1987 WL 15547, at *1 (D.D.C. Jan. 14, 1987)). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, this court may dismiss a claim for lack of subject matter jurisdiction. Although not every motion before the court addresses this threshold issue, the court has an independent duty to determine whether it has jurisdiction over this matter. *Koerpel v. Heckler*, 797 F.2d 858, 861 (10th Cir. 1986).

To the extent this court has subject matter jurisdiction, the court must determine whether plaintiff's action is subject to dismissal because it fails to state a claim upon which relief could be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well-pleaded facts in plaintiff's complaint and views them in a light most favorable to plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Although the court construes plaintiff's pleadings liberally,

*McBride*, 240 F.3d at 1290 (10th Cir. 2001), plaintiff's *pro se* status does not excuse him from the burden of coming forward with some "specific factual support," other than conclusory allegations, to support his claims. *Douglass v. Gen. Motors Corp.*, 368 F. Supp. 2d 1220, 1228 (D. Kan. 2005) (citing *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988)). The court need not accept as true those allegations that state only legal conclusions. *See id.* at 1110; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009). And the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 113 F.3d at 1173–74 (quotations and citations omitted).

Furthermore, in a case in which *in forma pauperis* status has been granted, the court is to dismiss the case if at any time the court determines the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). A district court may also dismiss a complaint filed by an *in forma pauperis* plaintiff if, it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Fogle v. Pierson*, 435 F.3d 1252, 1258–59 (10th Cir. 2006) (citing *Jones v. Bock*, 549 U.S. 199, 214 (2007)); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009). Such a complaint can also be dismissed for lack of personal jurisdiction and for improper venue, even though such defenses can be waived under Fed. R. Civ. P. 12(h)(1) if not properly raised. *Trujillo v. Williams*, 465 F.3d 1210, 1216–17 (10th Cir. 2006).

The court addresses the viability of plaintiff's complaint as to each defendant, addressing defendants' arguments in turn.

### *State of Kansas*

Plaintiff's complaint seeks money damages pursuant to 42 U.S.C. § 1983. Section 1983

expressly states that only "persons" can be sued. And neither states nor state officials acting in their official capacity are "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment renders a state "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63, (1974); *see, e.g., Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998). In the instant case, plaintiff has directly sued the state and its agencies, and Eleventh Amendment immunity applies in these circumstances.

In response, plaintiff acknowledges that the Eleventh Amendment bars his suit against the State of Kansas. Although he "disagree[s]," he recognizes the authority immunizing the State of Kansas from his claims. (Doc. 80, at 2.) Although there are exceptions to Eleventh Amendment immunity, none apply here. *Ruiz v. McDonnell*, 299 F.3d 1173, at 1181 (10th Cir. 2002). Plaintiff's suggestions of alternatives to dismissal are noted, but defendant State of Kansas' motion is granted, (Doc. 33-1) and the complaint against the State of Kansas is dismissed.

### *Kansas Department of Labor ("KDOL")*

There exists no dispute that KDOL is an arm of the state of Kansas. For the reasons set out above, the Eleventh Amendment prohibits plaintiff from pursuing this action against KDOL and the complaint against it is dismissed. *Id*. at 1181; *Lewis v. Kan. Dep't of Revenue*, 380 F. Supp. 2d 1211, 1213 (D. Kan. 2005) (holding that Kansas Department of Revenue and KDOL were arms of the state entitled to Eleventh Amendment immunity from §1983 civil rights actions).

### *Sedgwick County Sheriff's Department and Wichita Police Department*

Defendant Sedgwick County Sheriff's Department and defendant Wichita Police Department

correctly assert that they are not legal entities amenable to suit.[4] Pursuant to Fed. R. Civ. P. 17(b), the capacity of a party to be sued in federal court is to be determined by state law. Under well-established Kansas law, subdivisions, agencies, or departments of governmental entities do not have the capacity to sue or be sued in the absence of a statute providing otherwise. *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985) (holding Kansas Highway Patrol is not a suable entity). No Kansas statute creates the Sedgwick County Sheriff's Department or gives it the capacity to sue or be sued. The same is true of the Wichita Police Department. Therefore, both the Sedgwick County Sheriff's Department and the Wichita Police Department must be dismissed. *Fugate v. Unified Gov't of Wyandotte County*, 161 F. Supp. 2d 1261, 1266 (D. Kan. 2001); *see also Whayne v. Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997) (noting police department is not a suable entity).

### *Defendant Joe Simons*

Defendant Joe Simons of the Sedgwick County Sheriff's Department asserts qualified immunity. To determine the applicability of a qualified immunity defense, an appellate court must examine whether the official conduct at issue "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eastwood v. Dep't of Corr. of State of Okl*a., 846 F.2d 627, 630 (10th Cir. 1988). Plaintiff bears the burden of proving this strict two-part test by establishing that (1) defendant violated a constitutional or statutory right, and (2) that this right was clearly established. *See McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010).

In his amended complaint, plaintiff alleges that defendant Simons, acting under color of law

---

[4] Plaintiff appears to acknowledge this in his response: he notes that, if defendant Sedgwick County Sheriff's Department is correct, then it is part of Sedgwick County and "[f]ortunately, the Complaint also lists Sedgwick County as a defendant." (Doc. 110, at 3.) He also has included the City of Wichita as a defendant in this action.

and in his individual capacity, was involved in a "theft of time and attempted theft of money" from plaintiff. (Doc. 42, at 25, 65.) The court understands that plaintiff believes he was entitled to an "exit check" upon release from jail. Such check would be for the amount of the money confiscated upon his arrest less any money spent on commissary items while in jail. Plaintiff did not receive such a check upon release. After his release, he spent some time "tr[ying] to chase down his missing jail exit check by telephone." (Doc. 42, at 65.) According to the amended complaint:

> During his third telephone call, [plaintiff] reached CPL Simons at Sedgwick County Detention Administration. . . . The corporal said that [plaintiff] had signed for receiving the check and had signed the check. The CPL sounded as convincing as if he were holding the canceled check. [Plaintiff] instantly replied that he was near Administration and wanted to see both the front and the back of the canceled check. Cordial discussions ended. [Plaintiff] eventually said, "So, the only way to get my money is to sue?" CPL Simons replied, "Yes, that is correct." Thus, when a customer asks for money due him, CPL Simons gives him the "run around." The corporal attempts to steal the money.

(Doc. 42, at 65.)

Plaintiff admits that he received "the property in question" about a month later. Nevertheless, plaintiff expresses concern that "CPL Simons would be able to separate most patrons from their money. Therefore, CPL Simons' action will be mentioned again later under Monell. We count this as one minor theft of time." (Doc. 42, at 66.)

Plaintiff accuses defendant Simons of theft (Count XI) and negligent and intentional infliction of emotional distress (Count XVII). Plaintiff's *Monell*[5] claim, (Count V), asserts that certain officials "failed to ensure through custom, policy and/or practice," that government employees would, among other things, "discontinue institutionalized theft." While plaintiff accuses "the governments in Kansas" of being "an out-of-control kleptocracy," he does not specifically name

---

[5] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

-11-

defendant Simons in this Count, nor does he identify any allegedly offending policy or custom. (Doc. 42, at 78.)

Of course, the crime of theft cannot be prosecuted by a private citizen. And plaintiff offers no support for the theory that "theft of time" is a cognizable claim. Furthermore, to the extent plaintiff's claims are based on unconstitutional deprivation of property, his claims fail on the facts alleged. Even if taken as true, to the extent they can be understood, the facts do not support any unlawful taking of property (or anything else) by defendant Simons. Indeed, plaintiff fails to plead facts that would plausibly suggest defendant Simons violated plaintiff's constitutional or statutory rights. The complaint against defendant Simons is dismissed.

### *Defendants Linda Sorrell, Keith Lawing, and Workforce Alliance*

Defendants Linda Sorrell and Keith Lawing, employees of Workforce Alliance, a.k.a. Wichita Workforce Center, assert qualified immunity; and all three defendants assert that plaintiff's claims are barred by the statute of limitations and that he fails to assert any plausible claims.

The complaint appears to allege that Sorrell and Lawing, in their official and individual capacities, along with Workforce Alliance, violated plaintiff's Fourteenth Amendment rights by failing to investigate and disclose exculpatory information concerning the "sign in sheet," Ms. Ricks's mental illness, and the fact that she made false statements (Count I); violated his substantive due process rights under the Fourteenth Amendment by "using coercive tactics," suppressing evidence of Ms. Ricks's mental illness, and failing to adequately investigate the incident (Count II); and falsely arrested and maliciously prosecuted him, as evidenced by their "drafting, typing, signing, mailing, and officializing the No Trespass Letter, a letter of eight lies,"[6] and by conspiring with

---

[6] The Letter of Eight Lies to which plaintiff refers is reprinted by plaintiff in the body of his
(continued...)

others regarding the false arrest and malicious prosecution by concealing Ms. Ricks's mental illness (Count III). (Doc. 42, at 74.)

In Count IV, plaintiff asserts supervisory liability under § 1983 against these defendants, asserting they "were personally involved in failing to take preventative and remedial measures" to guard against the false arrest, malicious prosecution, and suppression of evidence. (Doc. 42, at 77.)

In Count V, plaintiff asserts that defendants failed to ensure through custom, policy and/or practice that officers and government employees would, among other things, "[6] conduct constitutionally adequate investigations," and "[10] not fabricate inculpatory evidence." (Doc. 42, at 78–80.) He alleges that constitutional violations of the type plaintiff suffered were foreseeable consequences of such failures.

Count VI alleges civil conspiracy "to deprive [plaintiff] of his constitutional right to be free from unreasonable searches and seizures, theft, false arrest, false imprisonment, malicious prosecution, medical malpractice, the right to due process of law, a fair trial, et al." (Doc. 42, at 81.) Specifically, he alleges that

> [t]he No Trespass letter was . . . signed by Sorrell. This Letter may have been written to infringe upon most parts of the First Amendment, especially freedom of speech near a TV camera. The letter may have been written to end [plaintiff's] Liberty to question whether Workforce politics promoted the spread of fungal issues.

(Doc. 42, at 81.)

Under state law, plaintiff also asserts malicious prosecution (Count VII); false arrest (Count

---

⁶ (...continued)
amended complaint. The letter is undated and neither the sender nor recipient is identified. But it appears to notify plaintiff that he is prevented from entering the Wichita Workforce Center based on repeated failures to comply with security requests regarding leaving unattended belongings in the building. The letter also cites his roaming the building; his entering offices in off-limit areas; and his stowing personal belongings in upstairs floors. Plaintiff contests each of the eight lies he believes are contained in this letter. (Doc. 42, at 27–32.)

VIII); abuse of process (Count IX); negligent training, supervision, and adoption of policies (Count XV); Negligence (Count XVI); and negligent and intentional infliction of emotional distress (Count XVII). Each of these allegations arise from defendants' alleged involvement in Ms. Ricks's false statements and/or their concealment of or failure to investigate Ms. Ricks's mental illness.

Sorrell, Lawing, and Workforce Alliance assert that the applicable two-year statute of limitations bars all of plaintiff's claims against them. Plaintiff's response appears to suggest that defendants did participate in the allegedly unlawful arrest and subsequent prosecution because the constitutional violations plaintiff suffered "would not have occurred" but for their actions, including "possibly" receiving a bribe to make false statements about plaintiff. (Doc. 116, at 3.)

Assuming the truth of plaintiff's assertions, the time frame from within which plaintiff's claims could have accrued ran from on or about November 13, 2007, when the alleged incident occurred and he was arrested, to on or about January 2, 2008, the date of the bench trial and the alleged perjured testimony of Ms. Ricks.

It appears to this court that such claims are barred by the two-year statute of limitations applicable to § 1983 actions, *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (noting that the appropriate statute of limitations for § 1983 actions arising in Kansas is two years under K.S.A. § 60-513(a)(4)), or that they are otherwise barred by the applicable one- or two-year limitations set out in Kan. Stat. Ann. §§ 60-513 (setting statute of limitations for state law claims at two years), and 60-514 (setting one-year statute of limitation for claims of malicious prosecution, false arrest, and false imprisonment). Because the court concludes that the claims against defendants Sorrell, Lawing, and Workforce Alliance are barred by the statute of limitations, it does not address the issues of qualified immunity or failure to assert any plausible claims. The complaint against defendants Sorrell, Lawing, and Workforce Alliance must be dismissed.

*Conclusion*

The court notes that its dismissal of the complaint against each of the above-named defendants is on the grounds of jurisdiction, capacity, immunity, and related threshold inquiries. Except as it relates to defendant Joe Simons, the court has not measured plaintiff's complaint against the pleading standards established by federal rules and case law. *See* Fed. R. Civ. P. 8(a); 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *Twombly*, 550 U.S. 544. However, having thoroughly reviewed plaintiff's complaint, the court is concerned about the viability of this entire action.

Federal Rule of Civil Procedure 1 mandates the just, speedy and inexpensive determination of every action. And when a party has been permitted to proceed *in forma pauperis*, the court may dismiss the case if at any time it determines the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Jones v. Bock*, 549 U.S. 199, 214 (2007) (holding that if plaintiff's allegations taken as true "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"). In addressing the instant motions, the court has gone to great lengths to construe plaintiff's complaint to set forth coherent factual allegations to support his claims.

However, it is not the proper function of the district court to assume the role of advocate for the *pro se* litigant. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). And the court has determined that plaintiff's ninety-four page complaint simply fails to comply with the federal pleading rule requiring a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, the first twenty pages of the complaint,

entitled "Introduction," appear to have absolutely no relevance to any of the claims.[7] In this section, plaintiff discusses significant experiences he has had and obstacles he has overcome that have contributed to his views of the world and of himself. These include such topics such as plaintiff's blood pressure, his metabolic rate, his eating habits, and prior appearances on television. He notes his aptitude for aerospace engineering and computer programming. He describes several thefts he was a victim of, a brush with death he had, and a scabies infestation at the Union Rescue Mission of Wichita. He appears to offer this information in part to explain why he could not have committed the criminal threat he was accused of.[8] But this court cannot sit in judgment of plaintiff's guilt or innocence in the underlying municipal case. *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) for the proposition that the *Rooker-Feldman* doctrine prevents this court from exercising jurisdiction over cases brought by state-court losers challenging final state-court judgments rendered before the proceeding in this court commenced); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Furthermore, the court finds that there is no way to construe plaintiff's allegations to

---

[7] Indeed, plaintiff suggests that "[s]peed-readers may want to skip down to page 20, Conclusion of Introduction." (Doc. 42, at 9.)

[8] For instance, plaintiff claims he "was not the type of citizen to even utter an inappropriate statement about a virus, a bomb, a threat, or offensive language . . . . Before 2005, he seldom heard a threat except those in movies." (Doc. 42, at 5.) Plaintiff maintains that "he has a background that prevents him from ever uttering an inappropriate question about a virus." He discusses how his father, a medical doctor, impressed upon him at a young age the difference between "different categories of diseases. . . . [Plaintiff] knew that a fungus causes jock itch—not a virus. . . . He knew the terms so well that he would not mix them up." (Doc. 42, at 5.) Plaintiff describes in detail how he and his partner, Mr. Goggin, "[s]aved [the] US Constitution in 1996" and in 1994, and how Mr. Goggin was later assassinated. (Doc. 42, at 8–9.)

plausibly, not merely speculatively, entitle plaintiff to relief. To the extent these defendants are amenable to suit and the suit is not barred by statutes of limitation, no defendant in this action could be expected to prepare a defense based on these unsubstantiated, conclusory, speculative, and far-fetched allegations. The gravamen of plaintiff's action is essentially that high-level government conspiracies—played out through the false statements of an allegedly mentally ill receptionist—resulted in an unlawful arrest and detention during which plaintiff was a victim of thefts and attempted homicides. What his complaint lacks is allegations of fact that raise a right to relief above a speculative level.

Therefore, in addition to granting each of the motions to dismiss on the grounds raised by defendants, the court dismisses the action in its entirety on the basis that it fails to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that the Defendant The City of Wichita's Motion to Dismiss (Doc. 65) is denied for the reasons set out in the court's September 7 Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant State of Kansas' Motion to Dismiss (Doc. 33-1); Motion to Dismiss Wichita Police Department (Doc. 63); Motion to Dismiss by Defendants Sorrell, Lawing, and Workforce Alliance (Doc. 67); Motion to Dismiss by Defendants Simons and the Sedgwick County Sheriff's Department (Doc. 71); and Defendant Kansas Department of Labor Motion to Dismiss or In The Alternative for Summary Judgment (Doc. 90) are granted.

**IT IS FURTHER ORDERED** that the action is dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Subpoena Electronic Data Concerning Unemployment Checks Concerning Mr. Pfuetze (Doc. 75); Motion to Subpoena

Information From Wichita Police Department Concerning Mrs. Mildred Hall (Doc. 76); Motion to Subpoena Incident Report 07C090116 From Wichita Police Department Concerning Mr. Pfuetze (Doc. 77); Motion to Subpoena File Attributes from City Hall (Doc. 78); and Motion to Subpoena Mental Health Records of Mrs. Mildred Hall (Doc. 83) are denied as moot.

Dated this <u>29th</u> day of September 2010, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**